IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRION SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV-20-219-RAW-SPS |
| ) | |
| KILOLO KIJAKAZI,[1] ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant Brion Smith requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g).  He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled.  For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]"  42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human*

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Services*, 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."  *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was thirty-nine years old at the time of the administrative hearing (Tr. 166).  He completed the eleventh grade and has previously worked as a water treatment plant mechanic, sewer line repairer, heavy equipment operator, and truck driver (Tr. 19).  The claimant alleges inability to work since January 4, 2018, due to left leg problems, back problems, and bipolar disorder (Tr. 194).

### Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on April 19, 2018.  His application was denied.  ALJ Jodi B. Levine conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated July 18, 2019 (Tr. 10-21).  The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal.  *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation.  She found at step four that the claimant could perform light work as defined in 20 C.F.R. § 404.1567(b), except she limited him to standing/walking or sitting for up to two hours at a time, for a total of six hours each during an eight-hour workday, with all changes of position

happening at the workstation, without taking a break. Additionally, she found that the claimant should never climb ladders/ropes/scaffolds (Tr. 15). The ALJ then concluded at step five that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, self-service sales attendant, assembler of small products II, and storage rental clerk (Tr. 20).

## Review

The claimant contends that the ALJ erred by: (i) failing to properly propound a hypothetical to the vocational expert ("VE") and (ii) failing to properly evaluate his RFC, including the consultative examination opinion of Dr. Conner Fullenwider, his need for a cane, and his obesity. The undersigned Magistrate Judge agrees with the claimant's second contention, and the case should be remanded.

The ALJ found the claimant had the severe impairments of status-post fracture of left leg, fused ankle, and degenerative disk disease, as well as the non-severe impairments of depression, bipolar disorder, and hypertension (Tr. 13). On April 19, 2010, prior to the claimant's alleged onset date, Dr. James Alvis performed an L5-S1 laminectomy, foraminotomy L5-S1 bilaterally, and posterior lumbar interbody fusion (Tr. 542-543). A radiologic report of claimant's lumbar spine showed intraoperative films demonstrate vertebral body compression fracture repair of L1 with methylmethacrylate cement on October 11, 2010 (Tr. 514). On May 10, 2012, Dr. Vytautas M. Ringus stated the claimant would have difficulty walking after his surgery, which would transfer the stress to his knee and his hip, making kneeling and squatting difficult (Tr. 418). Dr. Ringus performed a left arthroscopic ankle fusion and left teno-Achilles lengthening operation on December 28,

2012 (Tr. 468). The claimant also had a motorcycle accident in 2011 and suffered a fracture to left lower tibia and fibula requiring surgical intervention at OU Medical Center, with an additional surgery one year later (Tr. 347).

On January 3, 2018, the claimant complained of left foot pain after a large railroad tie fell on his left foot (Tr. 347). Dr. William Holland ordered further imaging, and an x-ray of the left foot revealed no acute displaced fracture of the left foot, mild osteopenia and post-surgical changes of the distal tibia and fibula on January 4, 2018 (Tr. 347, 360, 407).

On November 10, 2018, consultative examiner Dr. Conner Fullenwider, M.D., noted a decreased range of motion of his left ankle and decreased sensation of his left foot and a 10 cm surgical scar present over his lumbar spine (Tr. 373). Additionally, he indicated that the claimant was unable to squat or to rise from a squat, but that he was able to rise from a sitting position without assistance although he had some difficulty getting up and down from the exam table, and that the claimant could stand but not hop on either foot bilaterally (Tr. 373). Furthermore, he noted that the claimant presented with a cane that appeared medically necessary, because when he walked around the room without it he had an asymmetric, limping gait (Tr. 372). On the range of motion evaluation chart, left plantar flexion and left dorsal were both 10 degrees. Additionally, he rated the claimant's heel/toe walking and foot strength as weak (Tr. 377).

On May 7, 2019, Dr. Larry Lewis opined that the claimant will probably miss work because of his impairments and/or treatment about three or more days per month. In Dr. Lewis' "Clinical Assessment of Pain," he indicated that claimant's pain is present to such an extent as to cause a limitations or restriction(s) having more than a minimal effect on

the ability to do basic work activities of daily living on a day-to-day basis, and that basic physical work activities will increase the level of pain so as to cause inadequate functioning (Tr. 381). He further indicated that the claimant cannot be expected to attend any basic unskilled work required employment on a sustained basis (8 hours a day, 5 days a week, or an equivalent work schedule) (Tr. 392). In a "Medical Opinion Re: Sedentary Work Requirements," he indicated, *inter alia*, that the Claimant's medical condition requires the use of a hand-held assistive device such as a cane for occasional standing and/or walking, that he cannot sit for up to six hours in a normal seated position, that his medical condition requires elevation of his leg(s), and that he cannot sustain activity at a pace and with the attention to task as would be required in the competitive workplace (Tr. 383). He further indicated that the claimant's symptoms would cause him to take unscheduled breaks during an 8-hour workday, and that he could not be expected to attend any sedentary work requiring employment on a sustained basis (Tr. 383). In an RFC assessment, he indicated that the Claimant could not walk a city block without rest or severe pain. Additionally, he indicated that the claimant could sit two hours at a time and stand/walk less than an hour at a time, but that he would need to include periods of walking around approximately every forty-five minutes for ten to fifteen minutes during an eight-hour workday, and that he will need to shift positions at will and would sometimes need to take unscheduled breaks, and that his leg(s) should be elevated about up to his waist with prolonged sitting (Tr. 385-386). He checked boxes indicating that the claimant should never twist or climb ladders and could rarely stoop (bend), crouch/squat, and climb stairs. Finally, he again indicated that the claimant would be absent from work more than four days per month (Tr. 387).

As to his mental impairments, Dr. Chris Campbell conducted a mental status examination and determined that the claimant appeared capable of understanding, remembering, and managing instructions and tasks. However, he stated that the claimant did not appear able to sustain work-related mental activity at that time, despite not displaying any challenges with concentration, and not demonstrating any difficulties with answering questions during the July 3, 2018 evaluation (Tr. 361-367).

Dr. Ronald Painton reviewed the evidence and determined that the claimant could perform light work with no additional limitations (Tr. 73-84). On reconsideration, Dr. David Coffman agreed the claimant could lift/carry twenty pounds occasionally and ten pounds frequently but found that he could only stand/walk four hours in an eight-hour workday and sit about six hours in an eight-hour workday (Tr. 87). Notably, Dr. Coffman attempted to summarize Dr. Fullenwider's report, but omitted the statement that the claimant's cane was medically necessary (Tr. 88, 372).

At the administrative hearing, the ALJ called Dr. Okajiafor, a medical expert, to opine as to the claimant's physical impairments (Tr. 39). During the hearing, Dr. Okajiafor stated that he reviewed Exhibits 1F through 6F and it showed the fracture from the motorcycle accident, but that his impairments it did not meet or equal Listing 1.02 (Tr. 45-46). He opined that the claimant should have an RFC for the full range of light work, with no reduction of standing or walking, or further postural limitations (Tr. 46).

In her written opinion at step four, the ALJ thoroughly summarized the claimant's testimony as well as most of the medical evidence in the record. As to his physical impairments, the ALJ noted the claimant's history dating back to 2010, as well as the x-

ray from January 2018. She summarized Dr. Fullenwider's assessment, although she left out Dr. Fullenwider's statement that the cane appeared medically necessary just as Dr. Coffman did (Tr. 16, 372). The ALJ found that the state reviewing physician opinions as to his physical impairments was "somewhat persuasive," but further limited him from climbing ladders/ropes/scaffolds in light of the "longitudinal medical history and the opinion of the medical expert" (Tr. 17). The ALJ found Dr. Lewis's opinions not persuasive, because they were based on a one-time thirty-minute examination, and it was not clear whether he specialized in physical or mental health (Tr. 18). Additionally, she found his opinion internally inconsistent, finding he made conflicting statements as to the claimant's ability to concentrate (Tr. 18). She then found Dr. Okajiafor's opinion to be "very persuasive," because he is a board-certified physician in internal medicine, and the evidence showed the claimant's blood pressure was controlled with medication (Tr. 18), although the ALJ did not clarify how that affected standing/walking/sitting limitations. Furthermore, the ALJ noted that the claimant had decreased sensation and decreased range of motion of the left foot, but that he had normal strength elsewhere in his body (Tr. 19). The ALJ made no assessment of Dr. Fullenwider's opinion (Tr. 16-19).

  For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c(a) and 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are:

(i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

In this case, the ALJ thoroughly summarized the opinions from Dr. Fullenwider and Dr. Lewis, as well as the state reviewing physician opinions, but she omitted a major finding of Dr. Fullenwider, namely, that the claimant's cane was medically necessary. *See Staples v Astrue*, 329 Fed. Appx. 189, 191-192 (10th Cir. 2009) ("The standard described in SSR 96-9p does not require that the claimant have a prescription for the assistive device in order for that device to be medically relevant to the calculation of [his] RFC. Instead, [he] only needs to present medical documentation establishing the need for the device."). *See also* Soc. Sec. Rul. 96-9p, 1996 WL 374185, at *7 (July 2, 1996). Moreover, she failed

to assess the opinion at all, even its persuasiveness. This was error because the regulations discussed above require the ALJ to explain how persuasive she found the medical opinions she considered, and as part of that explanation, also require her to specifically discuss the supportability and consistency factors. *See* 20 C.F.R. §§ 416.920c(b), 416.920c(c). The supportability factor examines how well a medical source supported their own opinion with "objective medical evidence" and "supporting explanations." 20 C.F.R. § 416.920c(c)(1). The consistency factor calls for a comparison between the medical opinion and "the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. § 416.920c(c)(2).

Instead, the ALJ relied on the reviewing opinion, citing as primary evidentiary support that the claimant's blood pressure was well controlled by medication, which is unclear at best and irrelevant at worst to many of the claimant's alleged physical impairments with regard to sitting, standing, and walking. It was error for the ALJ to "pick and choose" her way through the evidence in this record in order to avoid finding the claimant disabled, which appears to be the case based on the fact the claimant's need for a cane was not even addressed. *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."). *See also Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") [citation omitted]; *Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir.1996) ("[I]n addition to

discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence that he rejects.") [citation omitted].

Because the ALJ failed to properly evaluate the opinion evidence, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 24th day of February, 2022.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**